UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JEANICE DOLAN, DANIEL A. MALIN,
KEITH VINCENT, and all others similarly situated,

     Plaintiffs,

  v.

BENJAMIN M. LAWSKY, Superintendent of
Financial Services of the State of New York in his
non-regulatory capacity as RECEIVER of Executive
Life Insurance Company of New York; Certain
Predecessor RECEIVERS of Executive Life
Insurance Company of New York;
METROPOLITAN LIFE INSURANCE
COMPANY; and CREDIT SUISSE GROUP AG,

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Civil Action No. 12 CV 8171 (JMF)

ECF Case

# DEFENDANT BENJAMIN M. LAWSKY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ABSTENTION OR, IN THE ALTERNATIVE, DISMISSAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

SIDLEY AUSTIN LLP

Steven M. Bierman
Martin B. Jackson
Eamon P. Joyce
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

*Counsel for Defendant
Benjamin M. Lawsky, Superintendent
of Financial Services of the State of
New York in his capacity as Receiver
of Executive Life Insurance
Company of New York*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 4

ARGUMENT ........................................................................................................ 6

I.  THE COURT SHOULD ABSTAIN FROM HEARING PLAINTIFFS'
    CLAIMS. ............................................................................................................ 6

    A.  New York Insurance Law Article 74 Is Specific And Comprehensive. ........... 8

    B.  This Suit Implicates A Matter Of Substantial State Concern, And Would
        Interfere With Liquidation Proceedings. .......................................................... 8

    C.  Plaintiffs' Suit Would Implicate State Statutes With Debatable
        Construction. ................................................................................................... 13

    D.  The Federal Interests Here Are Minimal. ....................................................... 14

II. IN THE ALTERNATIVE, THE CLAIMS AGAINST SUPERINTENDENT
    LAWSKY SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6). ............... 14

    A.  Plaintiffs Lack Standing To Assert The Claims Pleaded Here. ....................... 14

    B.  Plaintiffs' Claims Against Superintendent Lawsky Should Be Dismissed
        Because They Fail To Plead A Particularized Fraudulent Omission
        Claim Or A Plausible Breach Of Fiduciary Duty Claim. ................................. 17

        1.  The Complaint Does Not Allege Any Facts Supporting A
            Fraudulent Omission Claim Against Superintendent Lawsky. ............. 17

        2.  Plaintiffs Fail To State A Claim For Breach Of Fiduciary Duty ......... 20

    C.  Plaintiffs' Claims Are Time-Barred. .............................................................. 22

    D.  Plaintiffs' Claims Involving Conduct Before December 1992 Are
        Barred By The Discharge Order. ..................................................................... 25

CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Disposal Servs., Inc. v. O'Brien*,
   839 F.2d 84 (2d Cir. 1988)..................................................................................6

*Amsouth Bank v. Dale*,
   386 F.3d 763 (6th Cir. 2004) ........................................................................8, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................20, 21

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)..........................................................................17, 21

*Bethphage Lutheran Serv., Inc. v. Weicker*,
   965 F.2d 1239 (2d Cir. 1992).........................................................................6, 7

*Blanchard v. Commonw. Oil Co.*,
   294 F.2d 834 (5th Cir. 1961) ...........................................................................10

*BRS Assocs., L.P. v. Dansker*,
   246 B.R. 755 (S.D.N.Y. 2000)..........................................................................16

*Burford v. Sun Oil Co.*,
   319 U.S. 315 (1943)............................................................................... passim

*Capitol Indem. Corp. v. Curiale*,
   871 F. Supp. 205 (S.D.N.Y. 1994)............................................................8, 11, 13

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)..............................................................................19

*Chesapeake Bay Found., Inc. v. Weyerhaeuser Co.*,
   848 F. Supp. 2d 570 (D. Md. 2012)....................................................................24

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*,
   696 F.3d 206 (2d Cir. 2012)..............................................................................18

*City of Fairview, Okla. v. Norris*,
   234 F.2d 199 (10th Cir. 1956) ...........................................................................22

*Clark v. Willard*,
   292 U.S. 112 (1934)..........................................................................................12

*Colorado River Water Conservation District v. United States*,
   424 U.S. 800 (1976)..........................................................................................12

*Copeland v. Salomon*,
   56 N.Y.2d 222 (1982) ...........................................................................5, 11

*Corcoran v. Ardra Ins. Co.*,
   842 F.2d 31 (2d Cir. 1988)......................................................................8, 9

*Corcoran v. Frank B. Hall & Co.*,
   545 N.Y.S.2d 278 (App. Div. 1st Dep't 1989) ...............................15, 16

*Corcoran v. Universal Reinsurance Corp.*,
   713 F. Supp. 77 (S.D.N.Y. 1989)...............................................................13

*Cordts-Auth v. Crunk, LLC*,
   815 F. Supp. 2d 778 (S.D.N.Y. 2011),
   *aff'd*, 479 F. App'x 375 (2d Cir. 2012)....................................................16

*Cumberland Oil Corp. v. Thropp*,
   791 F.2d 1037 (2d Cir. 1986)....................................................................15

*Debussy LLC v. Deutsche Bank AG*,
   242 F. App'x 735 (2d Cir. 2007) ..............................................................16

*DirectTV Latin Am., LLC v. Park 610, LLC*,
   691 F. Supp. 2d 405 (S.D.N.Y. 2010)......................................................17

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
   822 F.2d 1242 (2d Cir. 1987)....................................................................18

*Ex parte La Prade*,
   289 U.S. 444 (1933).....................................................................................22

*Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*,
   414 F.3d 325 (2d Cir. 2005).......................................................................17

*First Penn-Pac. Life Ins. Co. v. Evans*,
   304 F.3d 345 (4th Cir. 2002) ............................................................ passim

*Gadson v. 1340 Hudson Realty Corp.*,
   580 N.Y.S.2d 291 (App. Div. 1st Dep't 1992) .......................................25

*Gallin v. Burdick*,
   265 N.Y. 492 (1934), (Sup. Ct. Kings Cnty. 1934) .................15, 16, 17

*Glynwill Invs., N.V. v. Prudential Secs., Inc.*,
   No. 92 Civ. 9267, 1995 WL 362500 (S.D.N.Y. June 16, 1995)...........23

*Hachamovitch v. DeBuono*,
   159 F.3d 687 (2d Cir. 1998).........................................................................7

*Hakala v. Van Schaick*,
   12 N.Y.S.2d 928 (Sup. Ct. Bronx Cnty. 1939) ....................................................22

*Hernandez v. O'Malley*,
   98 F.3d 293 (7th Cir. 1996) ...............................................................................22

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
   12 N.Y.3d 132 (2009) ........................................................................................23

*In re DDAVP Direct Purchaser Antitrust Litig.*,
   585 F.3d 677 (2d Cir. 2009).........................................................................17, 18

*In re Knickerbocker Agency, Inc. (Holz)*,
   4 N.Y.2d 245 (1958) ........................................................................................7, 8

*In re Liquidation of Midland Ins. Co.*,
   16 N.Y.3d 536 (2011) ........................................................................................10

*In re Rehab. of Exec. Life Ins. Co. of N.Y.*,
   No. 8023/1991, 2012 WL 1378567, slip op. (N.Y. Sup. Ct. Nassau Cnty. Apr. 16,
   2012) ...............................................................................................................4, 5, 13

*In re Rehab. of Exec. Life Ins. Co. of N.Y.*,
   No. 8023/1991, slip op. (N.Y. Sup. Ct. Nassau Cnty. Apr. 23, 1991).....................4

*In re Rehab. of Exec. Life Ins. Co. of N.Y.*,
   No. 8023/91, 2012 WL 1533181 (N.Y. Sup. Ct. Nassau Cnty. Apr. 19, 2012) ........4, 5, 13, 15

*In re Rehab. of Exec. Life Ins. Co. of N.Y.*,
   No. 8023/91, slip op. at 3 (N.Y. Sup. Ct. Nassau Cnty. Dec. 16, 1992)............................4, 25

*Koch v. Christies Int'l PLC*,
   785 F. Supp. 2d 105 (S.D.N.Y. 2011),
   *aff'd*, 699 F.3d 141 (2d Cir. 2012) ........................................................................24

*Ky. v. Graham*,
   473 U.S. 159 (1985)............................................................................................22

*Lac D'Amiante du Quebec v. Am. Home Assur. Co.*,
   864 F.2d 1033 (3d Cir. 1988).............................................................................8, 9

*Ladzinski v. MEBA Pension Trust*,
   951 F. Supp. 570 (D. Md. 1997),
   *aff'd*, 120 F.3d 261 (4th Cir. 1997).......................................................................23

*Law Enforcement Ins. Co. v. Corcoran*,
   807 F.2d 38 (2d Cir. 1986)............................................................................ passim

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005)........................................................................17

*Levy v. Lewis*,
    635 F.2d 960 (2d Cir. 1980)............................................................... passim

*Lewis v. Rosenfeld*,
    138 F. Supp. 2d 466 (S.D.N.Y. 2001)........................................................23

*Liberty Mut. Ins. Co. v. Hurlbut*,
    585 F.3d 639 (2d Cir. 2009)........................................................................7

*Mandarin Trading Ltd. v. Wildenstein*,
    16 N.Y.3d 173 (2011)................................................................................17

*McNulta v. Lochridge*,
    141 U.S. 327 (1891)..................................................................................11

*Mitchell Excavators, Inc. v. Mitchell*,
    734 F.2d 129 (2d Cir. 1984)......................................................................15

*Muto v. CBS Corp.*,
    668 F.3d 53 (2d Cir. 2012)........................................................................23

*Quackenbush v. Allstate Ins. Co.*,
    517 U.S. 706 (1996)....................................................................................6

*Royal Am. Managers, Inc. v. IRC Holding Corp.*,
    885 F.2d 1011 (2d Cir. 1989)....................................................................20

*U.S. Dep't of Treasury v. Fabe*,
    508 U.S. 491 (1993)....................................................................................6

*White Plains Coat & Apron Co. v. Cintas Corp.*,
    460 F.3d 281 (2d Cir. 2006)......................................................................18

*Wilkins v. U.S. Bank, Nat'l Ass'n*,
    514 F. Supp. 2d 1120 (W.D. Ark. 2007)...............................................23, 24

*Wolfson v. Mut. Benefit Life Ins. Co.*,
    51 F.3d 141 (8th Cir. 1995) ...................................................................12, 14

*Ziegler v. Pitney*,
    139 F.2d 595 (2d Cir. 1943)......................................................................11

**STATUTES**

11 U.S.C. § 109(b)(2) .....................................................................................6

v

CPLR § 202...................................................................................................................23

CPLR § 203...................................................................................................................23

CPLR § 213(8)...............................................................................................................24

CPLR § 214(4)...............................................................................................................23

N.Y. Ins. Law § 7402......................................................................................................4

N.Y. Ins. Law § 7403......................................................................................................7

N.Y. Ins. Law § 7405........................................................................................7, 12, 15

N.Y. Ins. Law § 7417...................................................................................................4, 7

N.Y. Ins. Law § 7419....................................................................................................10

N.Y. Ins. Law § 7435.........................................................................................5, 10, 13

N.Y. Surr. Ct. Proc. Act Law § 1506...........................................................................22

## RULES

Fed. R. Civ. P. 8.................................................................................................................

Fed. R. Civ P. 9(b)..............................................................................................................

Fed. R. Civ. P. 12(b)(6)......................................................................................................

Fed. R. Civ. P. 25(d).......................................................................................................022

Fed. R. Evid. 201(b).......................................................................................................020

## OTHER AUTHORITIES

*Annual Report of the New York Liquidation Bureau* (Oct. 15, 2008), *available at* http://www.nylb.org/Documents/NYLB_AnnualReport_2006.pdf........................24

*Mission & Leadership*, N.Y. State Department of Financial Services, *at* http://www.dfs.ny.gov/about/mission.htm............................................................18

*Executive Life Insurance Company of New York in Rehabilitation*: *Statutory Basis Balance Sheet With Report of Independent Auditors* (Oct. 15, 2008), *available at* http://www.nylb.org/Documents/NYLB_AnnualReport_2006.pdf...........................19-20, 24

*Executive Life Insurance Company of New York in Rehabilitation*: *Statutory Basis Balance Sheets With Report of Independent Auditors* (Mar. 12, 2009), *available at* http://www.nylb.org/Documents/2007_Audit.pdf.................................................25

Restatement 2d of Trusts § 223 ...................................................................................................22

Defendant Benjamin Lawsky, the Superintendent of Financial Services of the State of New York ("Superintendent Lawsky"), moves this Court to stay this action under the *Burford* abstention doctrine during the pendency of the liquidation of the Executive Life Insurance Company of New York ("ELNY") that is ongoing in the New York Supreme Court (Nassau County) pursuant to New York Insurance Law Article 74.  In the alternative, Superintendent Lawsky moves to dismiss the breach of fiduciary duty and fraudulent omission causes of action asserted against him pursuant Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

By commencing this action, Plaintiffs seek to circumvent ongoing proceedings in the New York Supreme Court that are subject to New York's comprehensive Insurance Law, and thereby make an end run around that court's anti-suit injunctions and other rulings.  Specifically, Plaintiffs assert claims against "Benjamin M. Lawsky, Superintendent of Financial Services of the State of New York in his non-regulatory *capacity as Receiver of Executive Life Insurance Company of New York*" without proper leave and in violation of several orders enjoining suit against, among others, the Superintendent and his agents that the Nassau County Supreme Court (the "Receivership Court") issued during insurance rehabilitation and liquidation proceedings that remain pending.  Compl. (cover page) (capitalization omitted, emphasis added); *id.* at p.12. Given New York's comprehensive insurance regulatory scheme, the New York Supreme Court's exclusive jurisdiction over insurer company insolvency proceedings, the pending ELNY liquidation, and the Receivership Court's anti-suit injunctions, this Court should stay this action.

States have primary responsibility for regulating insurance.  Pursuant to Article 74 of the New York Insurance Law, rehabilitation and liquidation proceedings involving a distressed or insolvent insurance company are within the New York Supreme Court's exclusive jurisdiction

and the Superintendent of Financial Services (formerly known as the Superintendent of Insurance) serves as the court-appointed receiver for any insurer in such proceedings.

Plaintiffs are three annuitants and thus creditors of the estate of ELNY, an insolvent insurance company that is in rehabilitation/liquidation proceedings. The Receivership Court recently determined that ELNY was insolvent, converted the ongoing rehabilitation into a liquidation proceeding, and approved a plan to liquidate ELNY's remaining assets and to distribute them in accord with Article 74's priority scheme. Plaintiffs here (and several other ELNY payees) appealed the Receivership Court's decision and order, and the appeal is pending.

Notwithstanding the pendency of the ELNY liquidation proceeding and the Receivership Court's orders enjoining suit against the Superintendent, the Complaint seeks to recover against Superintendent Lawsky, the present Superintendent, for the allegedly wrongful acts of his predecessors and their agents, which Plaintiffs contend depleted ELNY's assets. Plaintiffs' action is an attempt to obtain a preference over other ELNY creditors, which New York law prohibits and they and their counsel were unsuccessful in obtaining from the Receivership Court. If Plaintiffs were to recover in this action from the ELNY estate or Superintendent Lawsky,[1] any such recovery would need to be disbursed among ELNY's creditors in accordance with Article 74, which only the Receivership Court can do.

_____

[1] The Complaint's caption names Superintendent Lawsky in his official capacity as the court-appointed ELNY receiver. *See* Compl. at cover page; *see also infra* at 11 (claims against a receiver in his capacity as receiver are payable from estate funds). Most recently, however, Plaintiffs—in opposing Superintendent Lawsky's Motion for Contempt in the Receivership Court (*see infra* at 5-6)—stated that they sued Superintendent Lawsky only in his "personal capacity." Opp. at 9 ("The Federal Action is not an *in rem* suit against the ELNY estate or its assets . . . .") (attached as Ex. A to Declaration of Eamon Joyce (Ex. A) (All Exhibits are attached to the Joyce declaration and are simply cited as "Ex.__" hereafter); *compare* Compl. at p. 12. As shown below, regardless of whether Plaintiffs have asserted claims against Superintendent Lawsky in his capacity as the court-appointed ELNY receiver or in his personal capacity, this Court should either stay this action or dismiss all claims against Superintendent Lawsky for failure to state a claim.

Given these circumstances, *Burford* abstention is warranted, as the Second Circuit repeatedly has held in suits involving the Superintendent during pending Article 74 proceedings. *See*, *e.g.*, *Law Enforcement Ins. Co. v. Corcoran*, 807 F.2d 38, 39, 43-44 (2d Cir. 1986) (affirming decision to abstain from hearing claims against Superintendent); *Levy v. Lewis*, 635 F.2d 960, 963-64 (2d Cir. 1980) (affirming abstention because otherwise "the liquidation process would be greatly impeded" and plaintiffs' claims would need to be "satisfied by marshalling the existing assets of the insolvent company and by reinsuring existing policies using a state fund established for this purpose"). This case mirrors *Law Enforcement Insurance* in which the Second Circuit affirmed abstention from hearing suit against the Superintendent while an Article 74 liquidation was pending and an anti-suit injunction was in place. 807 F.2d at 39, 43-44. This Court also should abstain from hearing the claims in this lawsuit.

Alternatively, Plaintiffs' claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), because they lack standing to assert their claims and, even if they had standing, the claims would fail for three additional reasons. *First*, the financial harm about which they complain was allegedly sustained by the ELNY estate, and thus any claim belongs to the estate, not individual creditors of the estate. *Second*, Plaintiffs fail to plead either a fraudulent omission claim with particularity or a plausible breach of fiduciary duty claim against Superintendent Lawsky. Indeed, the Complaint mentions Superintendent Lawsky only twice, noting that he is the Superintendent and has the names and addresses of the putative classmembers. *See* Compl. at pp. 12, 15. Neither allegation states a claim. *Third*, Plaintiffs Dolan's and Vincent's claims are time-barred, and Plaintiff Malin's fiduciary duty claim is untimely. *Fourth*, the Receivership Court discharged the Superintendent from liability for conduct that allegedly caused harm about which Plaintiffs complain.

## BACKGROUND

In 1991, pursuant to Insurance Law § 7402, the Receivership Court ordered rehabilitation proceedings for ELNY, an issuer of life insurance policies and annuity contracts. *In re Rehab. of Exec. Life Ins. Co. of N.Y.*, No. 8023/1991, slip op. (N.Y. Sup. Ct. Nassau Cnty. Apr. 23, 1991) ("Rehabilitation Order") (Ex. B). The court appointed the then-acting Superintendent of Insurance as ELNY's Rehabilitator. *Id.* at 2. Pursuant to Insurance Law § 7419, the court enjoined all persons from bringing suit against ELNY, its assets, or the Superintendent of Insurance, his successors, and their agents. *Id.* at 5-6. The Superintendent has since been serving as Rehabilitator. *See In re Rehab. of Exec. Life Ins. Co. of N.Y.*, No. 8023/1991, 2012 WL 1378567, slip op. at 1-2 (N.Y. Sup. Ct. Nassau Cnty. Apr. 16, 2012) ("Liquidation Opinion"); *see also In re Rehab. of Exec. Life Ins. Co. of N.Y.*, No. 8023/91, slip op. at 3 (N.Y. Sup. Ct. Nassau Cnty. Dec. 16, 1992) ("Rehabilitation Plan Order") (Ex. C) (discharge of liability); *id.* at 3-4 (continuing previous orders).

Thereafter, pursuant to the Insurance Law, the then-acting Superintendent applied to the Receivership Court to liquidate ELNY. *See* Liquidation Opinion at 2. The court considered written objections, including those filed by these Plaintiffs, who were among the several dozen ELNY policyholders and payees to object (a fraction of the approximately 9600 policyholders and payees). *See id.* at 1-2. The court also conducted an 11-day evidentiary hearing (at which Plaintiffs Malin and Dolan testified). *See id.*; *see also* N.Y. Ins. Law § 7417 (requiring a "full hearing" on Superintendent's application for liquidation).

The Receivership Court issued the Liquidation Opinion and an order (*In re Rehab. of Exec. Life Ins. Co. of N.Y.*, No. 8023/91, 2012 WL 1533181 (N.Y. Sup. Ct. Nassau Cnty. Apr. 19, 2012) ("Liquidation Order")), that found ELNY insolvent, ordered ELNY into liquidation, and approved a comprehensive Restructuring Plan proposed by the Superintendent to effectuate

the process.  *See* Liquidation Op. at 1-6; Liquidation Order ¶¶ 1-3.  That plan provides how

ELNY's remaining assets will be disbursed for the benefit of its policyholders and payees

(including Plaintiffs).  *See* Liquidation Op. at 3-5; Liquidation Order ¶ 9.  The plan conforms to

Insurance Law § 7435(a), the priority statute which places claimants into classes and ensures that

each class is paid in full before the members of any subsequent class are paid.  *See* Liquidation

Op. at 3-5.  Under the statute, all ELNY policyholders and payees, including Plaintiffs, are Class

Four creditors.  N.Y. Ins. Law § 7435(a)(4); *see* Liquidation Op. at 3-4.  The court also ordered:

> All persons are enjoined and restrained from commencing or further prosecuting
> any actions at law or other proceedings against ELNY or its assets, the Receiver
> or the New York Liquidation Bureau, or their present or former employees,
> attorneys, or agents, with respect to this proceeding or the discharge of their
> duties under Insurance Law Article 74.

Liquidation Order ¶ 6; *see* N.Y. Ins. Law § 7419 (authorizing injunctive relief).

Represented by the same counsel who filed the Complaint here, Plaintiffs and several

other payees within the same statutory priority class appealed the Liquidation Opinion and the

Liquidation Order to the Appellate Division, Second Department (Docket No. 2012-05969).

They challenged, *inter alia*, the imposition of the most recent anti-suit injunction,

acknowledging:  "the Supreme Court granted the Receiver's request to permanently enjoin the

bringing of any claims against the Receiver or others, including claims in their personal

capacities."  Appellants' Br. 48 (Ex. D).  They also recognized that "'[l]eave of the court must be

obtained to sue a receiver in his or her representative, as opposed to individual, capacity.'"  *Id.* at

37; *accord Copeland v. Salomon*, 56 N.Y.2d 222, 228 (1982) ("[L]eave of the appointing court

[must] be obtained before suing . . . a receiver," and "bringing . . . an action without leave may

constitute contempt.").  The Second Department heard oral argument on November 15, 2012.

Despite these acknowledgements, Plaintiffs filed this suit against Superintendent Lawsky and

others.  Based on Plaintiffs' and their counsel's violation of the anti-suit injunctions,

Superintendent Lawsky moved for contempt sanctions in the Receivership Court on December 7, 2012. That motion is now fully briefed.

Given the pending appeal, the Superintendent has not begun liquidating the ELNY estate.

## ARGUMENT

## I. THE COURT SHOULD ABSTAIN FROM HEARING PLAINTIFFS' CLAIMS.

This Court should prevent Plaintiffs from undermining the ongoing liquidation proceedings pending in state court by abstaining from hearing Plaintiffs' claims against Superintendent Lawsky during ELNY's Article 74 proceedings and while the Receivership Court's anti-suit injunctions precluding actions against the Superintendent and the ELNY estate are in force. *See, e.g.*, *Burford v. Sun Oil Co.*, 319 U.S. 315, 327-34 (1943); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723-28 (1996).

"*Burford* abstention [is] appropriate where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Bethphage Lutheran Serv., Inc. v. Weicker*, 965 F.2d 1239, 1243 (2d Cir. 1992) (citation omitted); *see Am. Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84, 87 (2d Cir. 1988) (*Burford* abstention "avoid[s] interfering with state efforts to maintain a coherent policy in an area of comprehensive regulation or administration"). The United States Supreme Court has recognized that states have the primary (and often exclusive) responsibility for regulating the business of insurance. *See, e.g.*, *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 499-500 (1993) (discussing the "supremacy of the States in the realm of insurance regulation"). Because domestic insurers are excluded from the definition of "debtor" under federal bankruptcy law, 11 U.S.C. § 109(b)(2), the New York Insurance Law has detailed and exclusive provisions for the rehabilitation and liquidation of distressed and insolvent insurers. *See, e.g.*, N.Y. Ins. Law art. 74; *In re Knickerbocker Agency, Inc. (Holz)*, 4 N.Y.2d

245, 250 (1958) (liquidation provisions "furnish a 'comprehensive, economical, and efficient method for winding up the affairs' of such insurance companies by the Superintendent of Insurance" and "'are exclusive in their operation and furnish a complete procedure for the protection of the rights of all parties interested'") (internal citations omitted).  Moreover, the New York "Supreme Court . . . has exclusive jurisdiction of a liquidation proceeding," *id.* at 252, and the Superintendent of Financial Services must serve as the receiver (*i.e.*, Rehabilitator or Liquidator) for any insurer in rehabilitation or liquidation.  *See id.* at 250; N.Y. Ins. Law § 7417 (requiring that proceedings be commenced by Superintendent's application to the Supreme Court); N.Y. Ins. Law §§ 7403(a), 7405(a) (requiring that Superintendent serve as receiver).

Although "[e]very abstention case is to be decided upon its particular facts and not with recourse to some 'mechanical checklist,'" *Bethphage*, 965 F.2d at 1245 (citation omitted), in determining whether *Burford* abstention is appropriate, the Second Circuit has recognized that a court should consider factors including: (1) the degree of specificity of a state regulatory scheme; (2) whether the subject matter of the litigation is traditionally one of state concern; and (3) whether a state statute with a debatable construction is involved.  *See, e.g.*, *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 650 (2d Cir. 2009); *Hachamovitch v. DeBuono*, 159 F.3d 687, 697 (2d Cir. 1998); *Bethphage*, 965 F.2d at 1243.  Here, these and other factors strongly support abstention.  Indeed, the Second Circuit has repeatedly held that *Burford* abstention is appropriate during pending Article 74 liquidation or rehabilitation proceedings, including in circumstances materially indistinguishable from those here.  *Law Enforcement Ins. v. Corcoran*, 807 F.2d 38, 39, 43-44 (2d Cir. 1986) (affirming abstention decision where plaintiff sued the Superintendent during Article 74 liquidation proceedings and despite the liquidation court's anti-suit injunction); *see also Corcoran v. Ardra Ins. Co.*, 842 F.2d 31, 37 (2d Cir. 1988); *Levy v. Lewis*, 635 F.2d

960, 963 (2d Cir. 1980); *accord Capitol Indem. Corp. v. Curiale*, 871 F. Supp. 205, 208 (S.D.N.Y. 1994) (abstaining in suit against Superintendent, and recognizing that "the Second Circuit has clearly established that *Burford* abstention is appropriate in the context of a state's liquidation of insurance companies"). The Third Circuit has held likewise. *Lac D'Amiante du Quebec v. Am. Home Assur. Co.*, 864 F.2d 1033, 1038-49 (3d Cir. 1988) (holding that district court should have abstained under *Burford* from hearing suit against insurer during pending New York liquidation). This Court also should abstain here.

### A. New York Insurance Law Article 74 Is Specific And Comprehensive.

Article 74, which governs the rehabilitation and liquidation of insurers, is both specific and comprehensive. In *Law Enforcement Insurance*, the Second Circuit stated that the Insurance Law is "comprehensive" and has "particularly detailed provisions concerning their rehabilitation and liquidation." 807 F.2d at 43. The New York Court of Appeals has described the liquidation provisions in similar terms. *Knickerbocker Agency*, 4 N.Y.2d at 250, 253. The Third Circuit has done likewise. *D'Amiante du Quebec*, 864 F.2d at 1041. More generally, courts recognize that "state liquidation proceedings of insolvent insurers are exactly the sort of intricate state regulation on behalf of state-resident policyholders that the[] [*Burford*] doctrine[] [is] intended to protect." *Amsouth Bank v. Dale*, 386 F.3d 763, 780 (6th Cir. 2004) (Moore, J.); *id.* at 783 ("[s]tate liquidation proceedings seem like an excellent candidate for *Burford* abstention").

### B. This Suit Implicates A Matter Of Substantial State Concern, And Would Interfere With Liquidation Proceedings.

There also is no question that the business of insurance is a matter of substantial state concern. *See Knickerbocker Agency*, 4 N.Y.2d at 250; *supra* at 6-7. Indeed, the Second Circuit has concluded that the New York Insurance Law's rehabilitation and liquidation provisions constitute "a matter of special state concern." *Law Enforcement Ins.*, 807 F.2d at 43.

In *Law Enforcement Insurance*, the Second Circuit affirmed *Burford* abstention where, as here, plaintiff brought suit in this court against the Superintendent related to his role as liquidator of an insurer while liquidation proceedings were ongoing in New York Supreme Court. *Id.* at 39, 43-44. It held that "continuation of the federal action here would disrupt New York's unified administrative and judicial framework for the administration of the estates of insolvent insurance companies." *Id.* at 39. The Second Circuit explained that "[t]he New York courts have long been active partners in the state's regulatory plan," emphasizing that they "have implemented the state's policy of unified adjudication by requiring all claims and challenges to be centralized in the court supervising the liquidation or rehabilitation." *Id.* at 43-44 (collecting cases). The court summarized that this policy is "an important one," which "serves the state's strong interest in centralizing claims against an insolvent insurer into a single forum where they can be efficiently and consistently disposed of." *Id.* at 44; *see also Ardra*, 842 F.2d at 37 (holding abstention proper during liquidation to "avoid[] interference"); *Levy*, 635 F.2d at 964 (holding liquidation "would be greatly impeded" absent abstention); *accord D'Amiante du Quebec*, 864 F.2d at 1039-41, 1045-47 (discussing importance of New York scheme). Moreover, the court recognized that these principles have special force where, as here, the liquidation court had enjoined "all persons" "'from bringing . . . any action . . . against the said corporation or its estate, or the Superintendent and his successors in office, as Liquidator thereof.'" *Law Enforcement Ins.*, 807 F.2d at 39, 44; *see also First Penn-Pac. Life Ins. Co. v. Evans*, 304 F.3d 345, 350 (4th Cir. 2002) (Wilkinson, C.J.) (affirming abstention under *Burford* because the federal action would "infringe upon [the state court's] orders," including those enjoining interference with insolvent entity's assets); *Blanchard v. Commonw. Oil Co.*, 294 F.2d 834, 839 (5th Cir. 1961) (courts should give "special attention" to a state court's anti-suit injunction).

This action poses the same, or even greater, interference with the ongoing Article 74 proceedings. As described above, ELNY is and has been in liquidation and rehabilitation administered by the Superintendent and overseen by the Receivership Court pursuant to Article 74. The Receivership Court repeatedly has entered anti-suit injunctions precisely because litigation against the Receiver or implicating the ELNY estate's remaining assets would interfere with the Superintendent's work and the unified adjudication that Article 74 promises. *See* N.Y. Ins. Law § 7419(b) (the court "may at any time during [an Article 74] proceeding . . . issue such other injunctions or orders as it deems necessary to prevent interference with the superintendent or the proceeding, or waste of the assets of the insurer, or the commencement or prosecution of any actions, the obtaining of preferences, judgments, attachments or other liens, or the making of any levy against the insurer, its assets or any part thereof").

Those injunctions are especially important now that the Receivership Court has approved liquidation and the Superintendent is tasked with implementing (and the Receivership Court with overseeing) a comprehensive plan for liquidating ELNY's estate and orderly distributing the assets of the estate on a *pro rata* basis as state law requires. *See* N.Y. Ins. Law § 7435(a) (priority statute prohibiting "subclasses" "within any class" of creditors); *In re Liquidation of Midland Ins. Co.*, 16 N.Y.3d 536, 546 (2011) (Section 7435(a) "requires that the liquidator pay each member of the same class a pro rata share of the remaining assets from the liquidated estate"). Such injunctions prevent interference with the Superintendent's and the court's important work, and they stop creditors who attempt to disrupt § 7435(a)'s priority scheme or jump to the front of the queue. *See*, *e.g.*, *Levy*, 635 F.2d at 964 (holding that abstention was appropriate given ongoing liquidation proceedings because, *inter alia*, federal court involvement would risk "unequal treatment of liquidation claimants"); *Amsouth*, 386 F.3d at 780 (noting

importance of *Burford* abstention "when angry creditors attempt to sue insolvent insurance companies in federal court to jump ahead in the queue of claims"). Indeed, the Receivership Court rejected Plaintiffs' requests to have it distribute the ELNY estate's assets in a manner that would give them preferences over other creditors. Liquidation Op. at 4 (finding the methods proposed by these Plaintiffs and their counsel "illegal and discriminatory"). This lawsuit is a collateral attack on that ruling and on the Receivership Court's anti-suit injunctions that apply to Plaintiffs (as they admitted on appeal). Thus, abstention is warranted.

Even without the anti-suit injunctions, abstention would be appropriate here because Plaintiffs' claims are inextricably intertwined with the pending Article 74 proceedings.

*First*, a recovery likely would be charged against the estate. "Actions against the receiver are in law actions against the receivership or the funds in the hands of the receiver, and his contracts, misfeasances, negligences, and liabilities are official, and not personal, and judgments against him as receiver are payable only from the funds in his hands." *McNulta v. Lochridge*, 141 U.S. 327, 332 (1891); *accord Ziegler v. Pitney*, 139 F.2d 595, 596 (2d Cir. 1943) (applying *McNulta* and recognizing that receivers are potentially personally liable only "where they have acted ultra vires their authority"); *Copeland*, 56 N.Y.2d at 232 ("Damages for injuries to persons or property during the receivership caused by the negligence of the receiver or his agents or employees are part of the expenses of administration payable out of receivership funds or out of the property held by the receiver . . . ."); *Capitol Indem.*, 871 F. Supp. at 209-10 (abstaining under *Burford* and noting that "actions against a receiver are not personal in nature, but are against the receivership or the related funds"). Thus, this action implicates ELNY's estate. Because the ELNY estate's assets are within the Receivership Court's exclusive control and that court must distribute them pursuant to Article 74, any judgment here would need to be

effectuated in state court. *See*, *e.g.*, N.Y. Ins. Law § 7405(b) (Superintendent is vested with all property of the insurer); *id.* §§ 7434, 7435 (Supreme Court must distribute assets); *Levy*, 635 F.2d at 963 (affirming abstention because, *inter alia*, "the claims must be satisfied by marshalling the existing assets of the insolvent company and by reinsuring existing policies using a state fund established for this purpose"); *Wolfson v. Mut. Benefit Life Ins. Co.*, 51 F.3d 141, 146 (8th Cir. 1995) (affirming abstention under *Burford* where plaintiff brought claims against insurance company subject to state court insolvency proceedings, and recognizing that even if plaintiff were "allowed to press her claim to judgment in the federal court, she must still look to the state proceeding for satisfaction of that judgment").[2]

*Second*, even if Plaintiffs somehow could obtain a recovery against Superintendent Lawsky in his individual or personal capacity, *i.e.*, independent of the ELNY estate's funds (*see infra* § II.B), the Receivership Court would need to distribute any such recovery among ELNY's creditors. *See Levy*, 635 F.2d at 964; *see also Clark v. Willard*, 292 U.S. 112, 127-28 (1934) (discussing distribution of insurance company estate assets among creditors and the importance of "equality of distribution"). Plaintiffs do not allege that they were directly or uniquely harmed by the Superintendent's actions; rather, they seek to pursue a class action on behalf of all "shortfall" payees. Compl. at pp.14-15. Their theory is that the Superintendent's supposed misdeeds caused the ELNY estate to diminish, which, in turn, will cause ELNY payees to receive less money than would be due under their annuities. *See also infra* § II.A (discussing

---

[2] If Plaintiffs recovered against the Superintendent and asked this Court to distribute estate funds while the Receivership Court also was overseeing distribution of the ELNY *res* through liquidation, that "contemporaneous exercise of concurrent jurisdictions" also could make it appropriate to abstain under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976). *See Levy*, 635 F.2d at 965-67 (holding that *Colorado River* abstention was proper where liquidation proceedings and federal action both sought to dispose of an insurer's single pool of assets); *id.* at 969 (Mansfield, J., concurring) (same, because the liquidation court was "already engaged in the comprehensive adjudication of rights in a single fund").

Plaintiffs' lack of standing).  Thus, any recovery would need to be distributed *pro rata* among

payees in the same class of creditors, N.Y. Ins. Law § 7435(a), and consistent with the

liquidation plan approved by the Receivership Court, which only that court is positioned to do.

*See* Liquidation Op. at 4-5; Liquidation Order ¶ 9; *Levy*, 635 F.2d at 964; *see also Capitol*

*Indem.*, 871 F. Supp. at 209 ("reject[ing] [plaintiff's] argument that abstention is inappropriate

because [it] seeks to hold the [receiver] defendants personally liable"); *id.* at 209 n.7 (noting that

the Second Circuit affirmed *Burford* abstention in *Levy*, 635 F.2d at 963-64, "notwithstanding

the fact that the Superintendent was named in both his individual and official capacities").[3]  The

exercise of federal jurisdiction would disrupt New York's efforts in effectuating liquidation.

### C. Plaintiffs' Suit Would Implicate State Statutes With Debatable Construction.

Consistent with the discussion *supra* § I.B, absent abstention, if Plaintiffs' claims were

permitted to proceed to judgment here and they obtained a recovery, this Court would be put in

the position of interpreting how Article 74's priority statute (§ 7435(a)) requires any recovery to

be apportioned.  Accordingly, this Court's construction of those provisions would be novel.

Moreover, there is no doubt that Plaintiffs would seek to collaterally litigate and debate issues

related to Article 74 (some of which the Receivership Court already has ruled upon).  *See also*

*Corcoran v. Universal Reinsurance Corp.*, 713 F. Supp. 77, 79-80 (S.D.N.Y. 1989) (Leval, J.)

(finding *Burford* abstention appropriate in suit involving Superintendent "[e]ven where the state

law issues are settled" because "the exercise of federal court jurisdiction would hamper New

York's attempts to create a unified liquidation proceeding").

---

[3] Class Four claimants under Insurance Law § 7435(a)(4) include not only payees, but also the
various state guaranty associations.  *See generally* Liquidation Opinion at 3-4 (discussing
guarantee associations).  Any recovery for the claims asserted in the complaint would have to be
distributed on a *pro rata* basis among all those Class Four claimants.  N.Y. Ins. Law § 7435(a).

### D.    The Federal Interests Here Are Minimal.

Not only are the state interests relevant to *Burford* abstention exceptionally strong here, but the federal interests are correspondingly weak.  For example, because Plaintiffs bring claims under state law alone and the "case presents no issues of federal law," *Burford* abstention is "particularly" appropriate.  *Law Enforcement Ins.*, 807 F.2d at 44.  Additionally, abstention is especially appropriate because the insolvency proceedings have long been underway, whereas there is no "relative progress of the federal action."  *Wolfson*, 51 F.3d at 146-47 (affirming *Burford* abstention where plaintiff sued life insurance company during the pendency of state insolvency proceedings, and finding that "a decision not to abstain would squander judicial resources") (citing *Moses H. Cone Hosp. v. Mercury Contr. Corp.*, 460 U.S. 1, 21-22 (1983)); *see also First Penn-Pac.*, 304 F.3d at 349 (affirming *Burford* abstention and stating that "major inefficiencies, inconsistencies, and depletions of the receivership estate would be caused by litigating individual actions at different points around the country").

## II.    IN THE ALTERNATIVE, THE CLAIMS AGAINST SUPERINTENDENT LAWSKY SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6).

If this Court were to decline to abstain, Plaintiffs' breach of fiduciary duty and fraudulent omission claims against Superintendent Lawsky should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Compl. ¶¶ 146-50, 172-76.[4]

### A.    Plaintiffs Lack Standing To Assert The Claims Pleaded Here.

Plaintiffs' claims against Superintendent Lawsky are premised on the notion that misconduct by predecessor Superintendents' alleged agents caused a diminution of the ELNY estate's assets, which, in turn, will result in a loss of benefits to creditors under the Restructuring

---

[4] These claims are stated against the "Rehabilitator Defendants," a phrase the Complaint does not define.  Nonetheless, Superintendent Lawsky presumes that Plaintiffs directed them against him because the other four causes of action specify either MetLife or Credit Suisse as defendant, and Plaintiffs state that "Mr. Lawsky is joined . . . as Rehabilitator of ELNY."  Compl. at p.12.

Plan.  Compl. ¶¶ 145, 149-50, 174-76; *see* Liquidation Op. at 4 (discussing shortfall to payees).

That is, Plaintiffs seek to recover funds that the *ELNY estate* was allegedly deprived as a result of misconduct.  *See*, *e.g.*, Compl. at pp. 2, 6, 8, 40 (complaining about use of "ELNY's money" and "ELNY's assets"); *id.* ¶ 3 (claims are "asserted derivatively").  But Plaintiffs lack standing to assert such claims, whether asserted against Superintendent Lawsky in his official capacity as a receiver or in his personal capacity, because they belong to ELNY's estate.

Specifically, by statute "[t]he superintendent and his successors shall be vested by operation of law with the title to all property, contracts and *rights of action* of such insurer as of the date of the order so directing them to liquidate."  N.Y. Ins. Law § 7405(b) (emphasis added); *see* Liquidation Order ¶ 3 ("vest[ing] [the Superintendent] with title to ELNY's property" and "rights of action").  Article 74 does not grant standing to policyholders or payees like Plaintiffs. Accordingly, the "Superintendent ha[s] paramount and *exclusive* standing to assert claims not only on behalf of [ELNY], but also on behalf of its policyholders and creditors."  *Corcoran v. Frank B. Hall & Co.*, 545 N.Y.S.2d 278, 280 (App. Div. 1st Dep't 1989); *see Gallin v. Burdick*, 265 N.Y. 492, 493 (1934) (affirming the dismissal of creditor's action against directors and stockholders of insolvent insurance company because the Superintendent had the exclusive right to bring such claims), *aff'g*, 273 N.Y.S. 456, 458-60 (Sup. Ct. Kings Cnty. 1934).[5]

ELNY's property and rights of action include derivative claims that allege a direct injury to the ELNY estate, which results in a generalized injury to all of the insurer's payees like Plaintiffs.  *See*, *e.g.*, *Cordts-Auth v. Crunk, LLC*, 815 F. Supp. 2d 778, 786 (S.D.N.Y. 2011)

---

[5] These principles parallel those under analogous provisions of the Bankruptcy Code.  Claims for alleged misconduct that harmed the debtor directly (and thus injured all creditors only generally) "pass to the estate" and must be "vindicated by the trustee."  *Mitchell Excavators, Inc. v. Mitchell*, 734 F.2d 129, 131 (2d Cir. 1984); *accord Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1042 (2d Cir. 1986) (doing so "furthers the fundamental bankruptcy policy of equitable distribution among creditors").

("Under New York law, a claim is considered derivative where 'the remedy sought is for the wrong done to the [business entity].'") (alteration in original) (citation omitted), *aff'd*, 479 F. App'x 375 (2d Cir. 2012). In analyzing whether a claim is derivative, "the Court must look to the nature of the wrongs alleged." *BRS Assocs., L.P. v. Dansker*, 246 B.R. 755, 772 (S.D.N.Y. 2000). Here, Plaintiffs allege that the supposed misdeeds of Superintendent Lawsky's predecessors' agents "wast[ed] precious assets" of the ELNY estate, rendering ELNY insolvent such that its assets could no longer support its policy obligations, and that all policyholders will receive the same percentage reduction in the value of their benefits pursuant to Article 74's priority distribution scheme upon ELNY's liquidation. *See* Compl. ¶¶ 149-50, 176; *id.* at pp.14-15; *accord* Liquidation Op. at 4 ("each payee [is] getting the same percentage" "of the present value of their annuity benefits"). Plaintiffs clearly plead a derivative injury.

Because ELNY's policyholders and payees, including Plaintiffs, have no standing to bring claims that belong to the estate, their claims should be dismissed. *See Gallin*, 265 N.Y. at 493; *see generally Debussy LLC v. Deutsche Bank AG*, 242 F. App'x 735, 736 (2d Cir. 2007) (affirming dismissal pursuant to Rule 12(b)(6) where plaintiff lacked standing to bring derivative action); *Cordts-Auth*, 815 F. Supp. 2d at 781, 786-89 (dismissing derivative claims pursuant to Rule 12(b)(6) for lack of standing). Allowing Plaintiffs or other creditors to bring claims of the estate would frustrate the "pre-eminent purpose" of the New York insurance liquidation provisions, the "equitable treatment of all creditors and the avoidance of preferences." *Frank B. Hall & Co.*, 545 N.Y.S.2d at 282 (citing *Knickerbocker Agency*, 4 N.Y.2d at 250); *Gallin*, 273 N.Y.S. at 460 ("[o]nly disorder and confusion would result from a contrary holding" that estate's creditors, not the Superintendent, could bring claims for injury to the estate).

**B.    Plaintiffs' Claims Against Superintendent Lawsky Should Be Dismissed Because They Fail To Plead A Particularized Fraudulent Omission Claim Or A Plausible Breach Of Fiduciary Duty Claim.**

Even if Plaintiffs have standing, they have failed to state a claim against Superintendent Lawsky because the Complaint mentions him just twice and does not put any of his actions at issue.  *See* Compl. at pp. 12, 15.  Plaintiffs' fraudulent omission claim therefore violates Federal Rule of Civil Procedure 9(b), and their breach of fiduciary duty claim does not satisfy Rule 8.

**1.    The Complaint Does Not Allege Any Facts Supporting A Fraudulent Omission Claim Against Superintendent Lawsky.**

Pursuant to Federal Rule of Civil Procedure 9(b), "[c]laims of fraudulent omission must be made with particularity."  *DirectTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 436 (S.D.N.Y. 2010); *see In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2d Cir. 2009) (analyzing fraudulent omission claims under Rule 9(b)); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir. 2005) ("[a]ny fraud must be pled with particularity").  Plaintiffs must specify the who, what, where, when and why of the alleged fraud.  *See, e.g., ATSI Commc'ns.*, 493 F.3d at 99; *see also Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173 (2011) (elements: "a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury").[6]

Plaintiffs' fraudulent omission claim lacks *any* factual allegations about Superintendent Lawsky.  *See* Compl. ¶¶ 172-76.  Indeed, the Complaint mentions Superintendent Lawsky only

---

[6] New York law is discussed because it governs Plaintiff Malin's claim, *see* Compl. at p.11, and for present purposes (given the threadbare allegations), there is no material conflict between New York law and Maryland's (Plaintiff Dolan) or Arkansas's (Plaintiff Vincent).  *See Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331-32 (2d Cir. 2005).  In a conflict, Maryland and Arkansas have a greater interest than New York in applying their law to those Plaintiffs' claims.  *See White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 284-85 (2d Cir. 2006) (place of injury governs); *see also infra* § II.C.

twice, noting that he (1) "is the Superintendent," *id.* at p.12, and (2) has the "current names and addresses of all [putative classmembers]," *id.* at p.15. These allegations do not state a claim under Rule 9(b). Moreover, the Complaint's generic fraudulent omission allegations against the "Rehabilitator Defendants" do not suffice to state a claim against Superintendent Lawsky. *See id.* ¶¶ 172-76. On the contrary, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *see*, *e.g.*, *DDAVP*, 585 F.3d at 695 ("[P]laintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible."). Furthermore, the fraud allegations all involve events that pre-date May 2011, when the State Senate unanimously confirmed Mr. Lawsky as Superintendent.[7]

If Plaintiffs had pleaded their fraud claim against Superintendent Lawsky with particularity, it still would fail because they fail to plead colorable theories of reliance or that the alleged fraudulent omission caused their alleged damages.

---

[7] *See Mission & Leadership*, New York State Department of Financial Services, *at* http://www.dfs.ny.gov/about/mission.htm. *See generally Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*, 696 F.3d 206, 227 n.24 (2d Cir. 2012) (taking judicial notice of government-issued news releases). Specifically, Paragraph 175 of the Complaint cross-references the following sets of allegations: (1) Paragraphs 34-38 concern an alleged failure to provide information to the Receivership Court regarding an agreement in 1992; (2) Paragraphs 93-100 assert that Credit Suisse was "allowed" to employ a "risky" investment strategy that purportedly caused losses between 2000 and 2002; (3) Paragraphs 102-120 involve: documentation submitted between 1993 and 1998 that allegedly showed "inconsistent" information regarding MetLife commissions; allegedly "suspicious" payments between 1991 and 2002; alleged concealment of ELNY's financial condition between 1992 and 1995; alleged impediments to potential ELNY investors between 1999 and 2001; and (4) Paragraphs 131-143 concern non-disclosures to Governor Spitzer that supposedly prompted him to issue a press release in 2007 about how ELNY payees would be protected despite ELNY's shortfall. These allegations also are not particularized against anyone, failing to specify *who* fraudulently concealed information, *what* was concealed, and *when* the omissions purportedly occurred.

*First*, although Plaintiffs' claim is based on a third party reliance theory that the Receivership Court "relied [on the alleged fraud] to the detriment of the Plaintiffs," Compl. ¶ 174(c), Plaintiffs do not plead and cannot demonstrate reliance here. The crux of their claim is that the former Superintendents' (unidentified) agents told Governor Spitzer in December 2007 that "a deal had been reached with insurance companies and others assuring 100 percent payment to ELNY policyholders" when "[i]n reality, no deal had been reached." Compl. at p.10; *id.* ¶¶ 133, 135 (same).[8] But Plaintiffs do not plead and cannot show that the Receivership Court relied on the existence or absence of a "deal" in any way. *Compare id.* ¶ 143 (merely noting that the court was notified in December 2010 that there was "an intent to liquidate ELNY").

In any event, there could not have been reasonable reliance here because Plaintiffs acknowledge that *after* the alleged December 2007 omission, "[i]n October 2008, independent auditors" publicly addressed ELNY's financial condition and status. *Id.* ¶ 136; *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("The complaint is deemed to include . . . any statements or documents incorporated in it by reference."). Indeed, the auditors disclosed that no "deal" had been finalized, stating that ELNY's management "has worked diligently . . . to develop a plan to raise sufficient funds to permit ELNY to meet all of its future obligations, *although no guarantees can be made that such a plan will be finalized*, approved and ultimately successful." *Executive Life Insurance Company of New York in Rehabilitation*: *Statutory Basis Balance Sheet With Report of Independent Auditors* 7 (Oct. 15, 2008) (emphasis added);[9] *id.* at 18. As here, where "both parties have available the means of ascertaining the truth, New York

---

[8] Plaintiffs acknowledge that, as early as July 2001, third-parties knew that ELNY faced a $1 billion shortfall, Compl. at p.8, and it was publicly disclosed in December 2007 that the shortfall was projected to approach $2 billion by 2019, *id.* ¶ 134.

[9] *Available at* http://www.nylb.org/Documents/NYLB_AnnualReport_2006.pdf (pp.84-102 of pdf). Even if Plaintiffs had not incorporated these materials by reference, they are public records subject to judicial notice. *See* Fed. R. Evid. 201(b).

courts have held that the complaining party should have discovered the facts and that any reliance under such circumstances would be therefore unjustifiable." *Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1016 (2d Cir. 1989).

*Second*, even if some sort of reasonable reliance existed, Plaintiffs do not plead and cannot show that the alleged omission proximately caused any loss to them. There is no causal link between the alleged fraudulent omission and the shortfall about which Plaintiffs complain. Rather, regardless of whether anyone fraudulently concealed that there was no "deal," the $1 billion-plus shortfall still existed, and was publicly disclosed by outside auditors *after* the purported concealment from Governor Spitzer. Compl. ¶ 136. Had the absence of a "deal" been disclosed in 2007, Plaintiffs still would have faced a shortfall because the ELNY estate's liabilities exceeded its assets at that time. Plaintiffs have not pleaded that the timing of the disclosures would have materially changed their alleged financial harm. *See, e.g., id.* ¶¶ 142-45 (Plaintiffs "face a loss of benefits" which has not yet occurred). Accordingly, Plaintiffs cannot show any harm proximately caused by the alleged omission.

## 2. Plaintiffs Fail To State A Claim For Breach Of Fiduciary Duty.

As noted *supra* at 2 n.1, Plaintiffs have recently asserted that they are only suing Superintendent Lawsky in his "personal capacity." Accordingly, their breach of fiduciary duty claim against him should be dismissed because it does not allege sufficient facts to "'state a claim to relief that is plausible on its face'" against *him*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[10] A plaintiff "must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a

---

[10] If Plaintiffs' breach of fiduciary duty claim were being asserted against Superintendent Lawksy in his capacity as receiver, it would still fail because (i) Plaintiffs lack standing (*supra* § II.A); (ii) it is time-barred (*infra* § II.C), and (iii) the bulk of the claim is barred by the December 16, 1992 discharge order (*infra* § II.D).

right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A court cannot credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678-79 ("mere possibility of misconduct" does not suffice).

Like their fraud claim, Plaintiffs' breach of fiduciary duty claim lacks any factual allegations about Superintendent Lawsky. *See* Compl. ¶¶ 147-50. The allegations that he is Superintendent and has the names and addresses of the putative classmembers (Compl. pp. 12, 15) do not permit a reasonable inference that Superintendent Lawsky is liable for alleged misconduct. The claim therefore should be dismissed.

Furthermore, the generic breach of fiduciary duty allegations against the "Rehabilitator Defendants" do not state a plausible claim against Superintendent Lawsky because they all involve events pre-dating his tenure as Superintendent.[11] The law is clear that Superintendent Lawsky's predecessors' purported misdeeds cannot make him liable in his personal capacity. *See, e.g.*, *Ky. v. Graham*, 473 U.S. 159, 166 (1985) (explaining that "an award of damages against an official in his personal capacity can be executed only against the official's personal assets"); *Ex parte La Prade*, 289 U.S. 444, 458-59 (1933) (holding that successor state attorney general could not be substituted as the defendant in an action seeking a personal injunction

---

[11] *See* Compl. ¶ 149 (alleging that the "Rehabilitator Defendants" "violat[ed] a court order with respect to asset allocation," "employ[ed] a high risk tax inefficient investment strategy," "pa[id] Bureau expenses that were excessive," "fail[ed] to audit MetLife records," and failed to "seek[]a purchaser who could and would honor ELNY's policy obligations"); *see also id.* ¶¶ 67-77, 93-100 (allegedly improper asset allocations and investment strategies took place in early 1990s and early 2000s); *id.* ¶ 109 (expenses from 1991-1995); *id.* ¶¶ 102-06 (allegations regarding failure to audit MetLife records between 1993 and 2002); *id.* ¶¶ 28-29 (allegations regarding finding a purchaser in early 1990s); *id.* ¶¶ 111-20 (similar between 1999 and 2007).

against the predecessor attorney general); *Hernandez v. O'Malley*, 98 F.3d 293, 294 (7th Cir. 1996) (affirming dismissal of suit against successor state's attorneys in their personal capacities based on actions of their predecessor); Fed. R. Civ. P. 25(d) & advisory committee's note, 1961 Amendment (Rule 25, which provides for substitution of a public officer's successor as a party, does not apply to "actions against officers seeking to make them pay damages out of their own pockets for . . . misconduct in some way related to the office").

Nor can Superintendent Lawsky (or any Superintendent) be held personally liable for the alleged acts of his or his predecessors' agents: "The Superintendent of Insurance of the State of New York, when acting as a rehabilitator or liquidator . . . is a statutory receiver. . . . As such he may not be held to respond personally in damages for the acts or omissions of his agents and subordinates." *Hakala v. Van Schaick*, 12 N.Y.S.2d 928, 934 (Sup. Ct. Bronx Cnty. 1939). Likewise, Superintendent Lawsky cannot be held personally liable based upon his status as a successor fiduciary. *See*, *e.g.*, *City of Fairview, Okla. v. Norris*, 234 F.2d 199, 203 (10th Cir. 1956) (reversing judgment against city treasurer for "acts of misfeasance by a predecessor," because the "law is without exception that a trustee is not liable to a beneficiary for a breach of trust committed by a predecessor trustee"); Restatement 2d of Trusts § 223(1) ("A trustee is not liable to the beneficiary for a breach of trust committed by a predecessor trustee."); N.Y. Surr. Ct. Proc. Act Law § 1506 & Practice Commentaries ("substantially adopt[ing] the principle of Restatement Second of Trusts § 223").

Accordingly, the breach of fiduciary duty claim should be dismissed.

**C.    Plaintiffs' Claims Are Time-Barred.**

All Plaintiffs' breach of fiduciary duty claims and Plaintiffs Dolan and Vincent's fraudulent omission claims, whether asserted against the Superintendent is his official capacity as receiver or in his personal capacity, are barred by the relevant statutes of limitations.

*First*, each Plaintiff's breach of fiduciary duty claim has a three-year statute of limitations, and is out of time. *See, e.g.*, N.Y. CPLR § 214(4); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009); *Glynwill Invs., N.V. v. Prudential Secs., Inc.*, No. 92 Civ. 9267, 1995 WL 362500, at *3 (S.D.N.Y. June 16, 1995) (period runs from the breach); N.Y. CPLR § 203(a).[12] The allegations relevant to this claim all involve actions that occurred much longer than three years before Plaintiffs commenced suit. *See* Compl. ¶ 149; *supra* at 21 n.11. The purported breaches in connection with the implementation of ELNY's rehabilitation plan largely occurred more than 20 years ago, with the most "recent" acts occurring in 2007. *Supra* at 21 n.11. There is no allegation that any ELNY receiver's actions, let alone Superintendent Lawsky's, after November 8, 2009 (three years before this action was commenced) breached a fiduciary duty. Indeed, during the evidentiary hearing in the Receivership Court, Plaintiffs' counsel here conceded: "This estate has been in rehabilitation for 21 years. During that time, *any claims, any claims* that my clients might have had against *anyone have gone stale due to the passage of time*." Ex. E [March 27, 2012 Tr.] at 1020:18-21 (emphases added); *see generally Koch v. Christies Int'l PLC*, 785 F. Supp. 2d 105, 112 (S.D.N.Y. 2011) (taking judicial notice of testimony in separate action), *aff'd*, 699 F.3d 141 (2d Cir. 2012). The claim therefore should be dismissed.

---

[12] Under New York's borrowing statute (N.Y. CPLR § 202), when a cause of action accrues outside the state (as Plaintiffs Dolan and Vincent's do), he or she has the shorter of New York's statute of limitations or that where the claim accrued. *See, e.g., Muto v. CBS Corp.*, 668 F.3d 53, 57-58 (2d Cir. 2012); *see also Lewis v. Rosenfeld*, 138 F. Supp. 2d 466, 473-74 (S.D.N.Y. 2001) (holding breach of fiduciary duty claim accrued where plaintiff sustained the "'economic impact of the loss'"). Arkansas and Maryland also have three-year limitations periods. *Wilkins v. U.S. Bank, Nat'l Ass'n*, 514 F. Supp. 2d 1120, 1130 (W.D. Ark. 2007); *Ladzinski v. MEBA Pension Trust*, 951 F. Supp. 570, 573-74 (D. Md. 1997), *aff'd*, 120 F.3d 261 (4th Cir. 1997). New York's six-year statute of limitations applies only "where an allegation of fraud is essential to a breach of fiduciary duty claim." *IDT Corp.*, 12 N.Y.3d at 139. Here, Plaintiffs' fiduciary duty claim does not involve fraud, and is based on factual allegations independent from the fraudulent omission allegations. *Compare, e.g.*, Compl. ¶ 149 *with id.* ¶¶ 172-76.

*Second*, Plaintiffs Dolan's and Vincent's fraudulent omission claims are governed by three-year statutes of limitations under Maryland and Arkansas law, respectively, and therefore are time-barred.[13] Their fraudulent omission claims are premised on actions that occurred much earlier, *see supra* at 18 n.7; the most recent concealment supposedly occurred prior to Governor Spitzer's December 2007 press release. *See* Compl. ¶¶ 133-35. Indeed, Plaintiffs plead themselves into the time bar. The Complaint acknowledges that *after* the alleged concealment from Governor Spitzer, independent auditors disclosed in October 2008 that the shortfall (about which Plaintiffs complain) continued to exist. *See id.* ¶ 136. Moreover, that published report stated that (1) ELNY had assets of approximately $1.378 billion, but liabilities of $2.644 billion, *Statutory Basis Balance Sheet With Report of Independent Auditors* 3 (Oct. 15, 2008), and (2) there was no "deal" in place, *id.* at 7; *accord id.* at 18; *see also Annual Report of the New York Liquidation Bureau* 5 (Oct. 18, 2008) (the New York Liquidation Bureau's new management team "seeks to assure the continued full payment of all of ELNY's liabilities for the next 70 years") (available via same link and pdf, *see supra* at 19 n.9). The Auditors and the New York Liquidation Bureau published similar disclosures in 2009, more than three years before this suit was commenced.[14] Thus, Plaintiffs Dolan and Vincent's untimely fraudulent omission claims should be dismissed.

---

[13] *See Chesapeake Bay Found., Inc. v. Weyerhaeuser Co.*, 848 F. Supp. 2d 570, 579-80 (D. Md. 2012); *Wilkins*, 514 F. Supp. 2d at 1130. Under New York law, a plaintiff has the longer of a six-year period from when the fraud occurred or two years from when it could have been discovered, N.Y. CPLR § 213(8), thus the limitations periods applicable where Plaintiffs Dolan and Vincent's claims accrued apply under the borrowing statute. *See supra* at 21 n.11. New York's six-year limitations period applies to Plaintiff Malin.

[14] *See Executive Life Insurance Company of New York in Rehabilitation*: *Statutory Basis Balance Sheets With Report of Independent Auditors* 2 (Mar. 12, 2009) ("the Company has been in rehabilitation since 1991 and has a net capital deficiency that raises substantial doubt about its ability to continue as a going concern"); *id.* at 4-7 (providing details about receivership, and reiterating that "no guaranties can be made that such a plan [to raise sufficient funds to permit

**D.     Plaintiffs' Claims Involving Conduct Before December 1992 Are Barred By The Discharge Order.**

To the extent that Plaintiffs' claims rest on allegations about acts before December 16, 1992, they should be dismissed because they are barred by the Receivership Court's discharge order.  On that date, the Receivership Court approved a rehabilitation plan for ELNY and "ORDERED, that the Superintendent, as Rehabilitator, and his officers, agents, employees and consultants are discharged from any liability for their acts, *prior to the approval of the Plan* by this Court."  Rehabilitation Plan Order at 3 (Ex. C) (emphasis added).  "[T]he law is settled that where a receiver has been discharged from any and all liability, he or she may not be sued unless the appointing court vacates its order and grants leave to sue[.]"  *Gadson v. 1340 Hudson Realty Corp.*, 580 N.Y.S.2d 291, 292 (App. Div. 1st Dep't 1992).  Because the discharge order remains in effect, even if Superintendent Lawsky could be held liable for the acts of his predecessors— which he cannot (*see supra* § II.B)—Plaintiffs' many allegations regarding actions predating the discharge order fail to state a claim.  *See* Compl. ¶¶ 12-93, 107, 109, 174(a)-(b), 175.

## CONCLUSION

For the foregoing reasons, this Court should abstain from hearing Plaintiffs' claims against Superintendent Lawsky during Article 74 proceedings.  Alternatively, Plaintiffs' claims against Superintendent Lawsky should be dismissed with prejudice pursuant to Rule 12(b)(6).

---

ELNY to meet all of its future obligations] will be finalized") (*available at* http://www.nylb.org/Documents/2007_Audit.pdf (pp. 107-29 of pdf)).

Dated: New York, New York
   January 18, 2013

Respectfully submitted,

SIDLEY AUSTIN LLP


By: /s/ Eamon P. Joyce
  Steven M. Bierman
  Martin B. Jackson
  Eamon P. Joyce
  787 Seventh Avenue
  New York, New York 10019
  (212) 839-5300
  sbierman@sidley.com
  mjackson@sidley.com
  ejoyce@sidley.com

*Counsel for Defendant Benjamin M. Lawsky, Superintendent of Financial Services of the State of New York in his capacity as Receiver of Executive Life Insurance Company of New York*